May it please the Court, Kristen Thayer on behalf of Appellant Guizar-Rodriguez, I would like to reserve three minutes for rebuttal and I'll watch my time. There's a narrow question for this Court to address in this case, whether Nevada battery with a deadly weapon is a crime of violence under the Physical Force Clause in Section 16. There's no dispute that simple battery in Nevada does not qualify as a crime of violence because it can be completed by the slightest touch. So really what's before this Court is whether the deadly weapon component of that offense transforms it into a crime of violence. And we're really looking at the Nevada statute. Yes, Your Honor. Because there's no question that under the Federal statute, the least touching with a deadly weapon or instrument is violent in nature. This Court has said that in context of California's assault statute. Well, we said it in Grajeda, right? Yes, Grajeda addressed California's assault with a deadly weapon statute. And we said in that particular situation that assault with a deadly weapon other than a firearm or by any means of force likely produced bodily injury is categorically a crime of violence. And then we said even the least touching with a deadly weapon or instrument is violent in nature and demonstrates at a minimum the threatened use of actual force. Correct, Your Honor. And frankly, Johnson didn't change that, did it? I believe that – I don't know that Johnson changed that. Oh, that's the big case that's come down since.  Yes, Your Honor. Because Johnson says physical force equals violent force capable of causing physical pain or injury to another person. So if physical force equals violent force, and under Grajeda even the least touching is such force, it seems to me the Federal statute is pretty well there. So we've got to look at the Nevada statute. Yes, Your Honor. And these analyses always turn on the very discrete particular language and court cases of the State statute at issue. Let's go to Nevada. Yes. Tell me why the conviction under 200.481a and 2e1 is not similar to 18 U.S.C. 16a. Yes, Your Honor. And I turn to the case the Court directed the parties to address, Rodriguez, the recent Nevada Supreme Court case. Well, the reason I sent – the reason we sent that, I said aye. I was taking too much credit. The good chief was in charge. But the reason we sent that to you is it seems to me that this says we're looking at a functional test here. Rodriguez did hold that the definition deadly weapon as used in the Battery statute is a broad term. The legislature intended a broad term. And they said that the judge who was underlying and put it in a jury instruction that it was a functional test was correct. Yes, Your Honor. And so, therefore, if I do it in the functional test, the instrumentality, even though not normally dangerous, is a deadly weapon whenever it is used in the deadly manner. And here we are, categorical match. And I understand the Court reading the decision as the holding was that the definition included the inherently dangerous and the functional inclusion. Sorry, the functional definition. But the decision also stated that the other definitions of deadly weapon used in the enhancement statute, a separate statute, are instructive. And those definitions are overbroad. But they said instructive. And the thing that worries me about this, and this is why I thought this new case was interesting, in that before in Gombeck, and I don't know whether I say that right because I'm from Idaho and I don't say anything right, but in Gombeck it says the functional test is not appropriate for sentencing enhancements. But the other test of 193 is. And, therefore, the functional test is appropriate when the deadly weapon is an element of the crime. So here we go again. It seems to me that again says, even with Gombeck, that it's a functional test that I must apply. And this case from Nevada seems to say, even though it had never been said before, it's a functional test here, Judge. And, therefore, Nevada equals 16A. And I actually disagree, Your Honor. Gombeck was overturned by the Nevada legislature. There was somewhat of a struggle in the 90s between the courts, the Nevada court, defining deadly weapon narrowly to the inherently dangerous test. And then the Nevada legislature came along and in, I believe, 1995, broadened materially overbred or overbroadened the definition of deadly weapon by including the inherently functional the inherently dangerous test, the functional test, and then incorporating by reference all of these other definitions of deadly weapon in Nevada. Instructive here. It seems interesting to me that any judge who is in Nevada and giving jury instructions on battery committed with the use of a deadly weapon can use anything except the functional test? No, Your Honor. But the court may look to the deadly weapon in Hansen's statute. It seems to me that the use of the deadly weapon with battery and it being under Nevada statute, if you're going to look at that, the functional test is the only one left. You can use these other for sentencing enhancements, but you can't use them for this crime. No, Your Honor, and that's not. Gombeck was addressing the deadly weapon enhancement statute, and that is 193.165. And that was the definition that the legislature overruled, they overruled the limited definition that Gombeck provided. And that's in our reply brief. It explains that. So what we're left with and what the Nevada legislature clearly told the courts was that deadly weapon is a broad offense. The legislature intended to include inherent, functional, and all of these other which states that on school grounds, it is a deadly weapon to you cannot possess deadly weapons, and including in that definition is, quote, any device used to mark any part of a person with paint or other substance. That's in the enhancement statute. And in your reply, in your red brief, you say, under this expansive definition of deadly weapon, a person could be convicted of battery with a deadly weapon by painting a blue dot on another's arm with a paintbrush. Correct? Yes, Your Honor. Do you think that's an accurate statement of Nevada law? I do, because this is plain language. Under Duenas-Alvarez, has anybody ever been convicted of battery with a paintbrush? No, Your Honor. Well, isn't that the issue here? Under Duenas-Alvarez, we're told that extravagant and law school definitions of what could be a deadly weapon or whatever the issue is, is not the test. The test is whether there's any realistic application of that imaginative definition. Now, can you give me a case where a person has been convicted of battery with a deadly weapon by a paintbrush? No, Your Honor. Of course not. But under Chavez-Solis, the panel decision that Your Honor was on that decision said that's not the only way to show the overbreadth nature of a statute. When the plain language of the statute says any device used to mark another person with paint or other substance, that's the plain language of that statute. That's not – there's no interpretive gloss that a court – that I'm – that I'm submitting to the Court on that. It's just the plain language of the Nevada statute. Then what was the meaning of Duenas-Alvarez to say, well, the Supreme Court was saying you've got to bring us a case where this imaginative statute is actually applied? I mean, you know, a lot of things are hypothetical, but they're not applicable. I understand. I believe Duenas-Alvarez was addressing sort of the defendant's interpretation of a term of art to say that it was a very broad term and it encompassed all these things, putting a lot of heavy lifting on a term that the Court said we don't think that term means that, and there's no cases to show it means that. So it's when there's some sort of stretching of the plain language of the statute, this Court needs some indication that the State applies it that way. That's not true when the statute is plain. But it seems to me that Rodriguez provides Judge Bail with exactly where he's going. Because Rodriguez, the defendant, is suggesting that the judge improperly used the functional test in discussing this crime to the jury, and that the judge instead should have used the 193 definition. And the Supreme Court came back and said, wrong. You should use the functional test. And granted, no relief. So it seems to me that what we're really saying again is Nevada, if they're looking at this statute, used the functional test. That's why I thought you ought to look very heavily at Rodriguez because, frankly, it seems to me it forecloses your argument. And that's not what we're arguing. Actually, the defendant argued in Rodriguez that the Court could not look to this deadly weapon definition in a different statute. And argued only the inherently, which is a limited. And the Court said no. And the Court said no, use the functional test. The broader version. Yes. And it used the broader version of deadly weapon. So the defendant argued for just inherently dangerous, and not to look to any other statute, and you can only use that. And the Court said, no, we will look to this other statute. And that other statute, the enhancement statute, is where the overbreadth nature of this offense lies. That once you start looking to that statute, which the Nevada Supreme Court did, it shows that Nevada legislature has decided, and I'm not sure why, there's no legislative history, but decided to include these overbroad definitions of deadly weapon. And that's just the need. That's where we're stuck. This Court is stuck with the State. Thank you, Your Honor. I apologize for going over. Good morning. May it please the Court. Elizabeth White for the United States Court and Counsel. The defendant argues that one can be convicted of battery with the use of a deadly weapon in Nevada by touching someone on the arm with a paintbrush, to which I would say, why stop there? I mean, the tube of lipstick is a device that can be used to mark a person with a paintbrush. It can be used to mark a person with paint or another substance. The statute that is being cross-referenced is the statute regarding possession of dangerous weapons on school property. That covers the university, community college system, and all private and public schools in Nevada. So under the defendant's interpretation of this statute, it would be a gross misdemeanor, punishable up to a year in jail, to have a tube of lipstick on the University of Nevada, Reno campus, which I think would come as a surprise to a lot of folks on the University of Nevada campus. There has to be some common sense. This language, this thing about the device that can be used to mark a person, as we pointed out in our answering brief, it's been on the books in Nevada. The wording has changed a little bit, but it's been on the books for more than 23 years. And in search of Westlaw and Lexis, published and unpublished, State and Federal, not once has this language been interpreted or applied. So it cannot mean what its literal language says. I mean, that's the one thing we know. It is — there is no — there are actually exemptions in the statute, but there's no exemption for art departments. So, I mean, it cannot be that it's a gross misdemeanor to have a paintbrush on a university campus or a Nevada high school. In fact, if you go back and look, like I said, the language of this has been changed over the years. And when it was initially — when a version of that language was initially put in the statute in 1995, it was actually part of the definition of firearm. The initial statute had these things. And so I think probably it's intended to mean a paintball gun, although now there's actually paintball guns in there separately. So I don't really know. Maybe we ought to focus here just a little bit, because what I'm trying to do is I'm trying to determine whether 16A from the United States Code equals the Nevada law. Yes. And so it seems to me that I know what 16A is about. In fact, it doesn't seem to me that anybody argues about that. But what worries me is, does Nevada law say that the only way one can be convicted of willful and unlawful use of force or violence is under — committing with the use of a deadly weapon is under the functional test? Is that what the Nevada law says? What — no, but if I can just expand on that a little bit. Well, then what are you saying? Nevada law says you could do it other than under the functional test? Yeah, I think that that's what Rodriguez says. And — So if they could do it on — other than on the functional test, then we've got to go to Judge Bea's point, it's never been done? Well, here's the thing. Because your arguments that you've just made are that it would be stupid to do it. But what we're really looking at, has it ever been done? No. The government has not found a single case where this has ever been done. I think what the Court said in Rodriguez is — and this is right towards the very end — the legislature intended deadly weapon within the battery with a deadly weapon to be interpreted broadly according to both the functional and the inherently dangerous definition. Now, in Rodriguez, it was a screwdriver, and so the judge just — obviously, that's not inherently dangerous. But — But the judge gave the jury instructions as it related to the functional test. Exactly. And the defendant challenged the jury instructions, saying that weren't — those weren't the jury instructions that should have been given. And the Court said, au contraire, that's exactly the jury instruction that should have been given. Exactly. But, again, can I read that to say that it's only then the functional test when we're relating to this? Or, if I can read it more broadly, and that it can be other than the functional test, then at that point, I'm stuck with, have they ever done it that way? Because that's the only way. Otherwise, I'm going to say this doesn't match categorically. They have. There — I believe that there have been some cases that have found battery with a deadly weapon where someone was — where the weapon was a BB gun. And the BB gun is also cross-referenced in this school statute. It's actually — that's not defined as a BB gun, but something that can project a metallic something or other. Oh, in other words, Grajeda is really not dead on in point, because Grajeda was looking at a California statute, and they said categorical match. But if I take your approach, then it's not just the functional test. It's also the other test out of 193. You could have either test. And there is a possibility that this would not be, then, the force needed. Well, I would say — no, and this is where I go back to sort of the fundamental point. This goes back to Culverson. When you're talking about the use of a deadly weapon, this is different from Parnell. It's different from Worley. It's different from Giozzo's, where — where statutes say that if you're in possession of — if you commit a crime while in possession of a deadly weapon, you can have this enhancement. The Nevada — the Nevada use of a deadly weapon requires use. And what the Court said in — in Bush — Bushhouser — Bushhour, is that the plain language, use of a deadly weapon in the commission of a crime indicates that the instrumentality must have been used in conscious furtherance of the criminal objective. So we're talking about using a deadly weapon to commit a battery. And then the Court said in Culverson — this is also a Nevada State Supreme Court, which is what — where we're supposed to look — that in order to use a deadly weapon for purposes of this statute, there must be at a minimum conduct which produces a fear of harm or force by means or display of a deadly weapon in aiding the commission of a crime. So what we're talking about is intentional use of a deadly weapon that creates a fear, right? And that, by definition, is at a minimum the threatened use of force. It could be the actual use of force. It could be the threatened or attempted use of force. But either one of those fits within 16a. I mean, 16a covers all of those. So I think that, you know, they say that the exception that they carve out is, oh, well, it could be a paintbrush, to which I say, no, it couldn't. But even if it could, I mean, I would love to see an ADA try to prosecute someone for having a paintbrush or a tube of lipstick. I mean, there would be a constitutional vagueness challenge to this statute so fast, and they'd win, because when I first saw it, I had no idea what it meant. If you go back in the history, it probably means a paintball gun, but, you know, but who knows. In any event, they say that because it could be done with a paintbrush, it doesn't apply. But even then, what the Nevada Supreme Court says is that it has to be used in conscious furtherance of the battery, and at the very least has to produce a fear of harm or force by means of display of a deadly weapon. So you simply cannot violate this statute without at least threatening the use of force that is capable of causing physical pain or injury. The other, they — in their reply brief, they say that we didn't discuss the other definition, which is the so-called trap definition. In their opening brief, they had said, oh, it's overbroad because it encompasses so-called traps, but there was no argument about why that would be overbroad. And I think the Supreme Court has made clear that it doesn't have to be direct force. If you set up a gun to shoot someone when they open the door of your house, that is indirect force. But like the Court said in Castleman, you know, sprinkling poison isn't violent physical force itself. It's the using of that force to do something that's going to cause pain. So I think that we do go to Duanez-Alvarez. You know, what the Court said in Duanez-Alvarez is that the categorical analysis is not an invitation to legal imagination. We're not talking about hypotheticals. They have to point to either their own case or some other case. Of course, he can't point to his own case because he stabbed someone with a knife in this case, or someone else's case where it has been applied in that non-generic way, and there simply isn't one here. This Court very recently, I mean, within the last couple of years, I think, and Vega-Ortiz sort of looked at that, applied that rule to the California, that was a California drug statute that was divisible to the point of methamphetamine. And the defendant said, oh, well, even methamphetamine, that's still overbroad because the Federal government has an exception for L-methamphetamine, which is a non-narcotic form of methamphetamine that's used for nasal decongestant. And California is just as methamphetamine and doesn't have that exception. And what this Court said is the defendant would have to show a reasonable probability that someone could be prosecuted and convicted in California for having L-methamphetamine, and there isn't a case, and there's got to be some common sense here. I'm over my time, unless the Court has other questions. Kennedy, thank you.  All right. Would you like to spend a minute in rebuttal? Yes, Ms. Jolin. Thank you. I appreciate that. I'd like to just make two quick points. First, the government still has not recognized this Court's Chavez-Solis case, which said, quote, when a State statute's greater breadth is evident from its text, there need be no case that applies it in that manner. And that's where we're at, which brings me to my second point, that the government, amidst the literal language of the, what I'll call the paintbrush provision, means just that. It is not the Federal government's position or this Court's position to question the wisdom of the Nevada statute. The Nevada legislature gets to make that decision. The Nevada supreme courts have affirmed, okay, the Nevada legislature decided that deadly weapon means a very broad thing in Nevada. And that just means that under the categorical approach, it's not a match. And that's just one of the side of the reality, I guess, of the categorical approach where we must have a specific offense, and this is not that. And it seems basic to this that there is no, nobody's arguing that the statute is divisible, right? No, Your Honor. Thank you very much. Thank you. All right. The case of U.S. v. Guisarrodillas is submitted. We thank counsel for their argument.
judges: Bea, N.R. Smith, Nye